(Opinion published 52 N. W. Rep. 966.)

---

EMIL MALMGREN *et al. vs.* ALBERT S. PHINNEY *et al.*

Argued July 11, 1892. Decided July 14, 1892.

**Mechanics' Liens—Action.**

*Steinmetz* v. *St. Paul Trust Co.*, 50 Minn. 445, followed as to the time and manner of commencing actions to enforce mechanics' liens.

**Same—Service by Publication.**

The service of a summons by publication is valid, although one of the publications is made on May 30th, (Memorial day.)

**Vendor and Vendee.**

The vendor and vendee in an executory contract for the sale of real estate cannot, by any stipulation between themselves, deprive third persons (not parties to the contract) of their statutory rights to liens for material or labor subsequently furnished to the vendee for the construction of buildings on the premises.

**Mortgagees—Priorities.**

B. contracted to sell P. certain real estate for a consideration to be partly paid in cash on delivery of the deed, and the balance to be secured by mortgage on the premises. The contract provided that P. might execute a mortgage to a third person, which should be superior to the purchase-money mortgage to be executed to B. P. went into possession, and commenced the erection of a building on the premises, and for labor and material furnished therefor mechanics' liens attached to his interest in the property. Subsequently, in pursuance of their contract, B. conveyed to P., who thereupon executed a first mortgage to H., and a second mortgage for purchase money to B. *Held* that, in an action to enforce the mechanics' liens, upon a sale of the property there should be paid out of the proceeds (1) H.'s mortgage to the extent of the amount

due on B.'s mortgage; (2) the mechanics' liens; (3) the balance of H.'s mortgage; and (4) B.'s mortgage. *Reilly* v. *Williams*, 47 Minn. 590, (50 N. W. Rep. 826,) modified.

Appeal by defendants Charles J. Berryhill, Charles Davison, Charles Huntsaker, William C. Resser and Charles F. Konantz, from a judgment of the District Court, Ramsey County, *Kelly*, J., entered February 26, 1893.

The plaintiff Emil Malmgren and others, partners as Malmgren & Hokanson, on October 30, 1890, and on other days between that day and December 1, 1890, under a contract with the defendant Albert S. Phinney, furnished materials and performed work and labor in the construction of a stone foundation for a barn on lot six (6) in block three (3) of Nininger & Donnelly's Addition to Holcombe's Addition to St. Paul. They made and filed a statement for a lien pursuant to Laws 1889, ch. 200, and brought this action to foreclose it, making all parties interested defendants.

Phinney, Mahan, Peterson, Resser, Huntsaker and the various lien claimants mentioned in the opinion were made parties to the action. The summons was served on most of the defendants in March and April, 1891, and on defendant Konantz on October 31, 1891, more than one year after the last items of any of the lien claimants except those of Burns & Shaw. The defendant Peterson was not served personally, but service was made on him by publication of the summons for six successive weeks, once in each week, in the St. Paul Herald. The last publication was on May 30, 1891, (Memorial day,) by law a holiday. Laws 1891, ch. 122. The complaint and notice of *lis pendens* were filed March 19, 1891. The action was tried by the court, and findings made February 12, 1892. The trial court decided that proper service had been made on all parties, and found the amount due upon the various liens, and that Burns & Shaw were entitled to a lien on the whole lot, and the other lien claimants on the whole lot except the south forty feet owned by Konantz, and also that the liens of the Huntsaker and Resser mortgages were subject to the liens of Burns & Shaw, Anderson & Plaster and Shandrew & Scheible. The court decreed the sale of the south forty feet of the lot and of the remainder in separate parcels to pay

the amount found due on the liens, with interest and costs, and the amounts of the Huntsaker and Resser mortgages.     A decree was entered accordingly, and from it the defendants Berryhill & Davison, Huntsaker, Resser, and Konantz appeal.

*H. F. Stevens,* and *Charles J. Berryhill,* for appellants.

Both mortgages are entitled to preference over all the mechanics' liens, because of the provision in the contract of sale between Berryhill & Davison and Wick (Phinney's assignor) that the title and lien of those mortgages should not be affected by claims of material men or laborers for labor or material for the erection of the house.     The authority of the vendee to charge the interest of the vendor with liens depends upon the principle of agency, and the provision in question is binding on third parties as a limitation of such agency.     *Stees* v. *Kranz,* 32 Minn. 313; *Hill* v. *Gill,* 40 Minn. 441; *Paine* v. *Tillinghast,* 52 Conn. 532; *Hervey* v. *Gay,* 42 N. J. Law, 176; *McClintock* v. *Criswell,* 67 Pa. St. 183.

The service by publication on defendant Peterson was void, the last publication being made on May 30th, a legal holiday.     Laws 1×91, ch. 122.     A summons is "civil process" within the meaning of that statute.     *Burton* v. *Schenck,* 40 Minn. 52; *Dorman* v. *Bayley,* 10 Minn. 383, (Gil. 306;) *Sewall* v. *City of St. Paul,* 20 Minn. 511, (Gil. 459;) *Gibbs* v. *Queen Ins. Co.,* 63 N. Y. 114; *Lampe* v. *Manning,* 38 Wis. 673.

The land owned by defendant Konantz is not subject to any of the liens.     No action was pending against him until he was served, October 31, 1891.

The property should have been ordered sold in one lump.     The proper distribution of the proceeds among the lien claimants is not correctly adjudged.     *Chicago Lumber Co.* v. *Schweiter,* 45 Kan. 207; *Getto* v. *Friend,* 46 Kan. 24; *Schroeder* v. *Galland,* 134 Pa. St. 277.

*Humphrey Barton,* for respondents.

Plaintiffs' lien was adjudged subsequent to both mortgages, and they were not given a lien on the part of the lot owned by Konantz; therefore neither of the appellants can complain of the relief given plaintiffs by the judgment.     *Finlayson* v. *Crooks,* 47 Minn. 74.

The service on Peterson was valid. A summons is not process. *Hanna* v. *Russell*, 12 Minn. 80, (Gil. 43.) May 30th was not the day the summons was served, but merely an integral part of the time. *Savings & Loan Society* v. *Thompson*, 32 Cal. 347.

*Howard L. Smith*, for respondents Burns & Shaw.

There are two very obvious answers to appellants' claim that they could contract the property out of the reach of the law by a secret agreement: First. The vendor and vendee of land cannot by stipulation waive the rights of third parties under the lien law. Second. The rights of the vendors under the contract, whatever they were, were merged in the deed to Phinney on July 3, 1890, which deed contained no restriction or limitation as to liability of the vendor's interest to liens.

The service on Peterson was valid. A summons is not process. *Hanna* v. *Russell*, 12 Minn. 80, (Gil. 43.) Even if it is process, the service is not void because one of the publication days of the paper happened to be May 30th. It is not the printing, but the publishing, that constitutes service. The summons is published six weeks, or forty-two days; the fact that any one or more of those days happens to be Sunday, or a legal holiday, cuts no figure. *Pratt* v. *Tinkcom*, 21 Minn. 142.

A mechanic's lien action should be deemed to be commenced from the filing of the complaint and notice of *lis pendens*. The defendant lien claimants have no power to cause service of the summons in time to prevent being cut out, if the plaintiff chose not to serve it, and they are precluded from bringing an independent action to foreclose their liens. Laws 1889, ch. 200, § 10. At least the action should be deemed to be commenced as to all defendants, in their relation to each individual defendant, from the time of service on the individual defendant. The defendant Konantz was served within a year from the date of last item furnished by Burns & Shaw, and his interest is not released from their lien.

MITCHELL, J. April 3, 1890, defendants Berryhill and Davison, being the owners of a certain lot in St. Paul, (one hundred and sixty-four [164] feet in length from north to south,) contracted to sell it

to one Wick for $2,500, of which $1,500 was to be paid in cash on delivery of the deed, and the remaining $1,000 to be secured by mortgage on the lot.

This contract also provided "that, if Wick shall erect, or cause to be erected, a dwelling house on said lot, he may incumber said lot by a mortgage in an amount not exceeding $3,000, which said mortgage said Berryhill and Davison agree may be superior and paramount to the mortgage to be executed to them, as hereinbefore described, provided said house so to be erected upon said lot shall cost at least as much as the amount of said first mortgage. Said Wick is to, and hereby agrees to, protect said premises from all claims and liens of laborers or material men, and to pay the same; and it is expressly agreed that the title and lien of the said second mortgagees in and to said lot shall not be affected by any claims or liens of material men or laborers for material or labor furnished or performed for and in the erection of said house."

May 1, 1890, defendant Phinney, who succeeded to Wick's interest in this contract, took possession of the lot, and commenced the erection of a dwelling house, and also a barn, thereon; the house being located on the north one hundred and four (104) feet of the lot, and the barn on the twenty (20) feet immediately south of the one hundred and four (104) feet.

The following parties furnished Phinney labor and material for the construction of the dwelling house, except that that furnished by plaintiff was for the barn. The dates show when each party furnished the first item of labor or material: Burns & Shaw, May 19, 1890; Anderson & Plaster, June 8, 1890; Shandrew & Scheible, June 11, 1890; St. Paul Glass Co., July 29, 1890; Knauft, October 2, 1890; Malmgren & Hokanson, (plaintiffs,) November 1, 1890.

July 3, 1890, Berryhill and Davison conveyed the lot to Phinney, who on the same day executed a first mortgage to defendant Huntsaker for $3,250, and a second mortgage, subject to the Huntsaker mortgage, to Berryhill and Davison for $1,100, the balance of purchase money due them. This second mortgage was subsequently assigned to defendant Resser. The deed and the two mortgages were all promptly recorded. When Huntsaker took his mortgage he had

actual notice that the house was being constructed and was uncompleted.

July 7th Phinney conveyed the south forty feet of the lot to Wilgus, who afterwards conveyed it to defendant Konantz.

August 23d Phinney conveyed the north one hundred and four feet to defendant Mahan.

November 1st Phinney conveyed the remaining twenty feet to defendant Peterson.

These deeds were recorded July 8th, September 1st, and November 11th, respectively. The trial court held that defendants Burns and Shaw were entitled to a lien on the whole lot, and that the other lien claimants, including plaintiff, were entitled to liens on the whole lot, except the south forty (40) feet; also that the liens of the Huntsaker and Resser mortgages were both subject and subordinate to the liens of Burns and Shaw, Anderson & Plaster, and Shandrew & Scheible. The court also directed the sale of the south forty feet and the remainder of the lot to be sold separately. Berryhill and Davison, Huntsaker, Resser, and Konantz, alone appeal, and hence only the alleged errors of which they complain can be considered.

1. The court held that the lien claimants, other than Burns & Shaw, were not entitled to liens on the south forty feet, because the action was not commenced as against Konantz, the owner, within one year from the time of furnishing the last items of labor and material by the claimants. This is fully sustained by *Steinmetz* v. *St. Paul Trust Co.*, ante, p. 445, (52 N. W. Rep. 915.)

2. The court erred in holding plaintiffs entitled to a lien on the north one hundred and four feet of the lot. This had been conveyed by Phinney long before they furnished any labor or material. They should have been given a lien only on the twenty feet conveyed to Peterson. This error was doubtless a mere oversight or inadvertence on part of the learned trial judge.

3. It is urged that Peterson, the owner of twenty feet of the lot, and consequently a necessary party, was never served with the summons in this action. He was a nonresident, and service was had upon him by publication for six successive weeks once in each week; and, as one of the publications was made on May 30, (Memorial

day,) it is claimed that the publication was invalid, because the statute provides that "no civil process shall be served" on that day. Laws 1891, ch. 122. We have not overlooked the case of *Sewall* v. *City of St. Paul*, 20 Minn. 511, (Gil. 459,) in which it was held that a notice published six days, one of which was Sunday, was invalid, although there is respectable authority holding the contrary. See *Savings & Loan Society* v. *Thompson*, 32 Cal. 347. But we think there is a clear distinction between a publication on Sunday, and one on what we may term a "secular holiday." The Sunday issue is commonly considered as really a distinct paper from the issue on week days, and to a considerable extent circulates among a different class of subscribers. A large and respectable portion of the community who take the week-day issues do not take the Sunday issue. Hence a publication on Sunday would not be so likely to come to the attention of the parties for whom it is intended. It would not be so likely to serve the purpose for which it was designed, to wit, notice. Not so with papers issued on such holidays as Memorial day, the Fourth of July, and the like, which are part of the regular issue, and are distributed among the same subscribers. Again, the publication of a notice does not come within the spirit of the statute. The object of the prohibition against serving process on these holidays is to prevent any interference with their quiet enjoyment or observance, either by the intrusion of officers to serve process, or by the parties being compelled to obey them on those days. This reason applies to personal service, but not to service by publication. Our conclusion is that the service on Peterson was valid.

4. Counsel for appellants contend that both the mortgages are entitled to preference over all the mechanics' liens, because of the provision in the contract between Berryhill and Davison and Wick (Phinney's assignor) that the latter was to protect the property from all such liens, and that the title and lien of these mortgages (which were provided for in the contract) should not be affected by any claims of material men or laborers for labor or material for the erection of the house. It is claimed that the authority of the vendee in such a contract to charge the interest of the vendor rests upon the principle of agency, and that this provision is a limitation upon the

agency, and that the rights of every one who furnishes labor or ma-
terial are subject to this limitation. If this is so, it would be a very
convenient way to repeal the provisions of the lien law. Such a stip-
ulation cannot deprive of their rights under the statute persons not
parties to it. It is the law which at once creates the authority to
charge the land, and defines its extent. It is the statute, and not
the stipulation of Berryhill, Davison, and Witt, which must deter-
mine the rights of third parties. *Miller* v. *Mead*, 127 N. Y. 544, (28
N. E. Rep. 387.)

5. The only remaining question is whether the court was right in
holding that the "Resser" mortgage, given to Berryhill and Davi-
son for purchase money, is subject and subordinate to the mechanics'
liens. These liens attached while the legal title was still in Berry-
hill and Davison, and consequently attached only to the equitable in-
terest of Phinney, the vendee. Hence, if the "Huntsaker" mort-
gage was entirely out of the case, and Berryhill and Davison had
simply conveyed to Phinney, and taken back a mortgage for the
purchase money, this mortgage would unquestionably have taken
precedence of all the mechanics' liens, being merely a continuation
in changed form of the vendor's lien. But, doubtless, the trial judge
followed the case of *Reilly* v. *Williams*, 47 Minn. 590, (50 N. W.
Rep. 826,) in which we held that, where the vendor accepts from the
vendee as security for part of the purchase money a mortgage sub-
ject to a prior mortgage by the vendee to a third party, he holds it
also subject to a mechanic's lien which attached prior to the lien of
the first mortgage. The result arrived at in that case was clearly
right, because the vendor conveyed in April, while the mortgages
were not executed until August, and in the mean time (July 1st) the
mechanic's lien had attached, while the unincumbered title, both in
fact and of record, was in the vendee. On this state of facts the
result arrived at was undoubtedly correct; but, on further consider-
ation, we are satisfied that the ground upon which the decision was
placed, although plausible, was unsound. The controlling principles
underlying the whole doctrine of marshalling funds are equality and
equity; and it is not apparent why a vendor, by subordinating his
lien for purchase money to another mortgage, necessarily subordi-

nates it also to all liens having priority over the other mortgage, thus placing them in a better position than they would otherwise have occupied. Take the present case for example. According to their original and equitable order, these mechanics' liens, although prior to the Huntsaker mortgage, were subject to Berryhill and Davison's lien for purchase money; but under the rule of *Reilly* v. *Williams* they are moved forward, and take precedence of both mortgages. Such a rule lacks equity, and ought not to be adopted unless unavoidable. There is no practical difficulty in the way of applying another rule that will work out exact justice, and give to each lien the place which it is entitled to equitably, and according to the agreement of the parties. In the present case, as between the "Resser" mortgage and the mechanics' liens, the former is entitled to priority, while by the convention of the parties the "Huntsaker" mortgage is entitled to priority over the "Resser" mortgage. Hence, when the land is sold, then, as between Resser and the respondents, the former is entitled to a preference to the amount of his mortgage, but as between the two mortgagees Huntsaker is entitled to a preference over Resser. The result is that out of the proceeds of sale there should be paid (1) the Huntsaker mortgage to the extent of the amount of the Resser mortgage, (this not because of any priority of the "Huntsaker" mortgage over the mechanics' liens, but because of its priority over the "Resser" mortgage;) (2) the mechanics' liens prior to the Huntsaker mortgage; (3) the balance of the Huntsaker mortgage; (4) the "Resser" mortgage; (5) mechanics' liens subsequent to both mortgages.

We have not considered what changes, if any, in the manner of sale will be necessary, but have left that matter for the consideration of the trial court.

Cause remanded, with directions to modify the judgment in accordance with this opinion.

(Opinion published 52 N. W. Rep. 915.)

An application for a reargument was denied Oct. 5, 1892.