E. A. VIKER, Respondent, v. FRANK E. BEGGS, et al., Appellants.

(208 N. W. 383.)

**Mechanics' liens — inclusion within lien of small items not protected does not invalidate lien.**

1. In an action to foreclose a mechanic's lien, where it appeared that a house was rebuilt under the direction of one F. who was in possession under a contract for the purchase of an undivided one-half interest in the premises, and where it appeared that his cotenant had died leaving a will appointing three executors with powers of management, control and alienation, the executors knowing of the contemplated improvement and not objecting but imposing certain conditions not shown to have been brought home to the contractor, it is *held:*

The inclusion within a lien statement of comparatively small items incidental to the main contract, though such small items may not be protected by the lien, does not invalidate the lien where credit is given for cash payments in excess thereof and where the statement shows a *"just and true account of the demand due the plaintiff after allowing all credits,"* within § 6820 of the Compiled Laws for 1913.

**Mechanics' liens — tenants in common — tenant is presumed to consent to furnishing of labor under certain specified conditions.**

2. Where one tenant in common attempts to prescribe certain conditions upon which an improvement may be made by a cotenant in possession, among which conditions is one that he shall first procure release of mechanics' liens, and where such conditions were not brought to the knowledge of the person

Note.—(1) As to effect of inclusion of nonlienable items in claim under mechanic's lien, see annotation in 29 L.R.A.(N.S.) 314; 18 R. C. L. 942; 5 R. C. L. Supp. 1013.

(3) Meaning of term "owner" as used in mechanic's lien statute, see annotation in 2 A.L.R. 794; 18 R. C. L. 886; 3 R. C. L. Supp. 869; 4 R. C. L. Supp. 1224.

entitled to the lien, though the tenant in common knew that the work was in progress, such tenant is presumed to have consented to the furnishing of the labor, within § 6814 of the Compiled Laws for 1913.

**Mechanics' liens — landowner who sells fractional interest but retains legal title to land is an "owner" within mechanics' lien law.**

3. Where an owner of land sells an undivided fractional interest to a purchaser who enters into possession and causes improvements to be made with the knowledge of the vendor, the latter, retaining the legal title and beneficial ownership of an undivided one-half interest, is an owner within the mechanics' lien law and not merely a security holder.

**Mechanics' liens — where testator directed executors to retain certain shares and to manage and control same, such executor is owner of property within mechanics' lien law.**

4. Where a testator directed his executors to retain certain shares devised to his children, to manage and control the same, with power to sell, to borrow money and execute mortgages, and to dispose of and execute deeds, the executors so authorized are owners of the property, within §§ 6823 and 6828 of the Compiled Laws for 1913, for the purposes of the operation of the mechanics' lien law.

**Mechanics' liens — where improvements were made on real property, subject to control of executors or trustees under will, with knowledge of executors but without knowledge of probate court, mechanics' lien does not extend to estate.**

5. The power of executors or trustees under a will, while an estate is in process of administration, to contract with respect to improvements upon real property in such manner as to render the estate liable to a mechanic's lien, within §§ 6814, 6823 and 6828 of the Compiled Laws for 1913, is subject to the control of the probate court, and where it appears that such improvements are made with the knowledge of executors, but without authority of the probate court, a mechanic's lien does not extend to the estate.

**Mechanics' liens — interest of heirs of full age who have knowledge that improvements are being made and do not object, is subject to mechanics' lien without authority of probate court.**

6. The interest of heirs or legatees of full age, who have knowledge that an improvement is being made for which a mechanic's lien is given and who do not object thereto (Comp. Laws 1913, § 6814), is subject to the lien.

Opinion filed October 23, 1925. On rehearing March 17, 1926.

Mechanics Liens, 40 C. J. § 82 p. 98 n. 45, 50 New; § 105 p. 109 n. 32; § 108 p. 110 n. 62; § 117 p. 116 n. 57, 63; § 118 p. 117 n. 73; § 299 p. 246 n. 83. Payment, 30 Cyc. p. 1235 n. 78.

Appeal from the District Court of Traill County, *Cole,* J.

Modified and affirmed.

*I. A. Acker,* for appellants.

"Where a claim includes both lienable and nonlienable items, and by reason of the method of stating them the nonlien items cannot be segregated from the general aggregate, the entire lien must fail." 18 R. C. L. p. 942, § 78.

"Thus a lumping of the charge for material furnished and used in the construction of a dwelling house and fence does not create a lien on the house when that alone is sought to be charged by the lien." Kezartes v. Works, 15 Or. 529, 16 Pac. 407, followed in Williams v. Toledo Coal Co. 25 Or. 426, 36 Pac. 159, 42 Am. St. Rep. 799.

"While an administrator stands in the place and is regarded as the representative of the deceased person, for the purpose of settling his business affairs and distributing his estate, in reality he serves in a dual capacity, and in addition to standing as the personal representative of the deceased he occupies the position of trustee for the person beneficially interested in the estate." 11 R. C. L. p. 23, § 6; Doke v. Benton Lumber Co. (Ark.) 169 S. W. 327, 52 L.R.A.(N.S.) 871.

*Kaldor & Johnson,* for respondent.

It is not necessary to even set out the name of the owner in the lien, or specify in the lien the conditions that must exist in order to entitle a person to a mechanic's lien. Red River Lumber Co. v. Friel (N. D.) 73 N. W. 203.

Including minor items from other accounts does not invalidate a mechanic's lien. Robertson Lumber Co. v. Swenson (N. D.) 138 N. W. 894.

Disputed payments in an amount due a lienor may be determined upon a trial de novo in this court in a mechanic's lien foreclosure case. Turner v. St. John (N. D.) 78 N. W. 340.

BIRDZELL, J. This is an action to foreclose a mechanic's lien. The lien claimed is for a balance due on account of work done in the construction of a house upon certain land in circumstances to be hereinafter described. The defendants denied the existence of the lien and prayed judgment that the pretended lien filed by the plaintiff be de-

clared null and void. From a judgment in favor of the plaintiff the defendants have appealed and demand a trial de novo. The facts necessary to an understanding of the questions presented on the record are as follows: Edwin Beggs and W. S. Williams, being the owners of section 5, township 144, north of range 52, west of the 5th p. m., entered into a contract with John Frank and Mary Frank for the sale by the former and purchase by the latter of an undivided one-half interest in the land for the sum of $17,052. The contract recited a cash payment of $2,000 and provided for deferring the remainder for a period of six years. It further provided that the purchaser, John Frank, was to farm the land and deliver to the legal owners one fourth of the grain, the latter to pay a certain portion of the expenses and for one-half of the seed. It likewise contained an option for the purchase of the remaining undivided one-half interest by Frank at the end of six years "at whatever land is worth at that time." (For the purpose of this opinion this option will be considered as void for indefiniteness.) Frank went into possession under this contract in the winter of 1914 and continued to farm the land until 1923. Up until 1921 there, apparently, had been no break in his relations with the vendors. Edwin Beggs, a resident of Illinois and the record owner of the land, had died in 1916, and his estate was being handled by three executors. There were proceedings for the probate of his will in North Dakota in 1920 and in the inventory the land in question was listed. It appears that Frank made payments by grain and otherwise to Beggs and to his executors from time to time as his circumstances and the results of his farming operations justified, but that he was unable to reduce his indebtedness. On the contrary the indebtedness had grown larger, as he had not been able to pay taxes, keep up his interest payments and repay advances that Beggs had made to enable him to continue his farming operations. However, in the spring of 1921, he was still hopeful of being able to pay out on his contract and was likewise desirous of improving the living quarters for himself and family. The house upon the land had become scarcely habitable, though it was rather large in size. It seems that about May 1, 1921 Frank wrote to one Sinclair, one of the executors of the Beggs estate, of his desire to rebuild the house, stating that it would cost

around $2,000. To this letter Sinclair replied on May 16th that the figures seemed low and suggested that it would surely not include equipment for heating and plumbing and painting, saying, furthermore, that he did not think it right for the executors to keep Frank's family in the old house in its then present condition; but he expressed disappointment at not having received a larger payment on the contract the year before, stating that they had only received $1,000 for interest and crop share during the last two years, further stating a willingness to accept part payment on the account, but that they desired a definite statement as to how much Frank would pay before starting on the house. He then expressed these conditions: "In case you do rebuild that house, we would want it distinctly understood and agreed that you would pay for the same in full. Also, we would want a release from the contractor of all mechanics' liens against the same. We would want this so that he would not come back on us for any payment on the house. We want to be just as fair with you as possible but considering the shape you are in with us it is mighty hard to figure out just what is the right thing to do. . . .

". . . It looks like with all of the acres you have in crop this year that you surely will be able to come out in good shape. We are still willing to stand behind you and want you to help us out all possible."

This letter was acknowledged by Frank on June 2d, who then wrote: "Evidently I did not make my letter plain as to contractor's figures on rebuilding. His figure was for all labor except hauling, that includes wrecking the old house, clean the lumber, concrete work including 500 barrel cistern in basement, plastering and painting and everything in labor line. I figured it would be safer to furnish the material as it would be very easy to get something pulled over if they furnished as there is so much material in this old house. The mill work and shingles and cement will be practically all will have to buy. As to the builder lien I could get them to release that, but if I can't get started this month I will be afraid to start as the harvest will be here around the middle of July and if nothing happens the crop will be something to handle. If I build I won't be able to pay you anything as it would have to be cash as they would have no comeback on the farm but I

would make you an assignment of this crop if you desire it or turn it over to you at threshing time as you like. I am working the public to build for me, or in other words I am building $3,000 roads to get the money to build with."

On June 20th Sinclair answered this letter, stating "there is one thing very certain that we would want understood and that is that you would pay for this house yourself. Furthermore we would want it understood that we want the house to belong to the farm and could not be moved away in case you should vacate the farm. Also as I have written you before we want release of lien by the contractor and also from the parties from whom you buy the material. . . . It is not really good business paying out a lot of money for a new house but there is no question but what you need it. Please let me know what you intend to do as soon as possible."

On June 30th Frank wrote: "We got started last Friday wrecking and clearing lumber. . . . As to the releases, if you will draw them up I will get them signed or I will get someone to draw them up as it is out of my line."

Sinclair advised his coexecutors of the desire of Frank to rebuild the house and apparently they were apprised of the contents of the letters above referred to and partially quoted. No release of the lien was ever taken from the contractor, the plaintiff in this action, but he was advised that the land belonged to the Beggs estate and of Frank's interest under the contract of purchase. He contracted to do the work upon the house for $1,800 and he and Frank entered into a separate contract for the moving of a portion of the old house and constructing a leanto and for building a tank, it being necessary to remove the old house entirely that the new building might be on the same location and temporary living quarters provided. It was agreed that his compensation for this should be $200. At the completion of the contract a mechanic's lien statement was filed showing that Viker had performed the labor under a contract with Frank in erecting a house on the land described, of which the said "J. A. Frank was then and is now the owner," and claiming a lien "in favor of the said dwelling house," and including the land upon which it is situated, the attached statement being as follows:

Hillsboro, North Dakota.
Jan. 3rd, 1922.

J. A. Frank, Blanchard, N. Dak.
        To E. A. Viker, Dr.
           Contractor and Builder

1921

| | | |
|---|---|---:|
| May 16 | To contract price agreed upon for doing the work in erecting a dwelling house on section 5, township 144, range 52, which work was completed on Nov. 9th, 1921 ........................ | $2,000.00 |
| | By cash received at different times, to apply on said contract for work, between May 16, 1921 and Dec. 15th, 1921 ...................... | 834.98 |

Balance due on contract for said work ...... $1,165.02

In 1923 Frank, finding himself unable to keep up the payments on the land and perform his contract, gave a quitclaim deed to the vendors. At that time he was owing them upwards of $22,000, and had discharged no part of the principal indebtedness for the land.

The judgment in the court below decrees that the plaintiff's lien is valid as against the land and it decrees a sale thereof. The contentions of the appellants are (1) that the plaintiff's lien is invalid because the statement is not a just and true account of the demand due the plaintiff. (2) That the contract for the work was not acquiesced in or consented to by the executors, except upon the conditions stated in Sinclair's letters. (3) That the executors, or the heirs and legatees of the Beggs' estate are not owners within the mechanics' lien law and that the house was built by the respondent for the sole use and benefit of J. A. Frank who is the owner, within the lien statute, of an undivided half interest in the land to which only the lien attaches.

We are of the opinion that there is no merit to the first contention. If it be assumed that, after the making of the contract to build a house for $1,800, it was found necessary to have certain additional work done in order to facilitate the building operations, and if it be further assumed that such work was not protected by the lien, it does not follow, in our opinion, that the lien filed is invalid on account of includ-

ing such items. It appears that no prejudice whatever could have resulted from the inclusion of these items, for the reason that the statement filed shows a cash payment by Frank much in excess of the amount of such disputed items. Of course, it would not be argued that Frank could not have first discharged his obligation to pay for the items which might not properly have been embraced within the lien and then applied the balance of his payment upon the contract, which would have resulted in exactly the same balance. There is no evidence that Frank directed the application of his payment or payments to that part of the work covered by the original contract calling for $1,800. In the absence of such evidence the contractor had a clear right to first discharge the unsecured claim. We think the statement filed shows a just and true account of the demand due the plaintiff after allowing all credits within § 6820 of the Compiled Laws for 1913.

As to the contention that the work was not acquiesced in or consented to by the executors, except upon the conditions stated, we are of the opinion that this contention does not go far enough to reach the validity of the lien. There is an implied concession that the executors knew that the work was being done—and this concession is clearly required by the evidence of Beggs, one of the executors of his father's estate and by the letters of Sinclair. The statute says:

"The owner shall be presumed to have consented to the furnishing of such labor or material or machinery or fixtures if at the time, he had knowledge thereof and did not give notice of his objections thereto to the person entitled to such lien." Comp. Laws 1913, § 6814.

It does not appear that the executors ever brought home to the contractor knowledge of the conditions upon which they were willing that the house should be built. If the executors are owners, therefore, within that portion of the statute last quoted, it is clear on this record that they had knowledge of the furnishing of labor for which the lien is claimed and that they did not give notice of any objections thereto to the person entitled to the lien.

This brings us to the contention which we regard as the most vital, namely, that the lien is not good as to the Beggs' estate or its beneficiaries, because the executors are not owners within the mechanics' lien law and that the house was built by the respondent for the sole use

53 N. Dak.—55.

and benefit of Frank who was the owner of an undivided half interest, to which only the lien could attach.

In his will Edwin Beggs disposed of certain real property situated in Illinois, specifically describing it. He then devised the balance of his property, both real and personal, to his wife and children in equal shares subject to certain trusts. He directed his executors to retain the shares of his children and manage and control the same. He appointed his sons, Frank E. and John V. Beggs, together with his nephew, Sinclair, executors, authorizing them "to sell, dispose and execute deeds for any of my real estate, not hereinbefore expressly devised, also to borrow money and execute mortgages on any of" his real estate, and it was provided that the signatures of any two executors should be sufficient for any instrument. The real estate in question was not specifically devised. John V. Beggs, an executor and a beneficiary, testified with respect to his knowledge of the negotiations for the rebuilding of the house, as follows:

Q. What was said and done with reference to building on section 5, town. 144, range 52, Traill county, North Dakota?

A. Mr. Frank wrote down there and wanted to remodel the old house and we objected to that, but finally we told him that if he would send us $1,000 on his indebtedness to us, to the estate, and pay for the remodeling of the old house at his own expense and furnish us with releases it would be all right. . . .

Q. And did you, Mr. Beggs, or did any of the executors, as far as you know, consent to the building of a new house on section 5, town. 144, range 52 in Traill county, North Dakota?

A. No, sir.

Q. Did you at any time consent to the building of a house or the remodeling of an old house without a release from Mr. Viker or from Mr. Frank or from the contractor?

A. No, sir.

Q. —of all mechanics' liens against said premises?

A. No, sir.

On cross-examination he testified:

Q. Which one of the executors, Mr. Beggs, was it that was looking after the farm and corresponding with Mr. Frank with reference to this farm?

A. Mr. Sinclair had most of the correspondence.

Q. And the other two of you left it to him to handle that part of it?

A. I have been handling it for the last two years, two or three years myself. He has always consulted me.

Q. Up to and including the summer of 1921, I mean?

A. He always consulted me and Mr. Williams down there.

Q. Did you see the letters he got from Mr. Frank introduced in evidence here?

A. Yes, sir.

Q. And did you have knowledge of the responses he made to those letters?

A. Yes, sir; read everyone of them.

Q. And also the copy of the letter that Sinclair sent to Mr. Frank that was introduced in evidence here?

A. Yes, sir.

Q. You knew the contents of those letters?

A. Yes, sir.

Q. You talked the house deal over with Sinclair at that time?

A. Yes, sir.

Q. So you and Sinclair had a mutual understanding and knowledge of what Frank was doing?

A. No, sir.

Q. You knew about as much about that as Sinclair did?

A. Yes, I knew as much as he did.

Q. Was it not also understood that Mr. Frank would build the house in question and pay your share by applying or using money that he owed you people, that is correct, is it not?

A. No, sir. . . .

Q. Your brother is the third executor, is he not?

A. Yes, sir.

Q. Did he also talk over with you and Sinclair about this farm?

A. Yes, sir.

Q. He knew as much about the transaction as you and Sinclair did?

A. I suppose he read Frank's letter, yes sir.

Section 6823, Comp. Laws 1913 provides that the entire land upon which any building, erection or other improvement is situated, or to improve which the labor was done or things furnished, including that portion of the same not covered therewith, "shall be subject to all liens created by this chapter to the extent of all the right, title and interest owned therein by the owner thereof for whose immediate use and benefit such labor was done or things furnished. . . ." Section 6828, Comp. Laws 1913 defines an owner, within the mechanics' lien law to be "every person for whose immediate use and benefit any build-. ing, erection or improvement is made, having the capacity to contract, including guardians of minors or other persons."

It is argued by the appellants that Frank, being in possession under a contract of purchase, was the person for whose immediate use and benefit the work in question was performed within the meaning of §§ 6823 and 6828, supra, and, consequently, was the "owner" for the purpose of applying the lien statute, and they cite, among other cases, Johnson v. Soliday, 19 N. D. 463, 126 N. W. 99, in support of this contention. In that case the question presented was whether or not the lien would attach to the interest of a vendor under an executory contract of sale whose vendee was in possession, for improvements made by the latter, and it was held that the vendor was not an owner or the person for whose immediate use and benefit the improvement was made within the statutes hereinabove referred to. However, in the instant case Frank was the beneficial or equitable owner of only an undivided one-half interest in the land, the Beggs estate and Williams concededly owning the other undivided half. The opinion in Johnson v. Soliday, supra, proceeds upon the basic reasoning that a vendor holding title merely as security should not be in a worse position with respect to mechanics' liens than he would occupy had he taken a mortgage to secure the purchase price, as appears from the following at page 465 of the opinion:

"The vendor holds the legal title, and in relation to mechanics' liens is the holder of the legal title as security for the payment of the purchase price, and the vendee is the equitable owner. Their relations are analogous to those of a mortgagor and mortgagee, where the material or work is contracted for the mortgagor after the recording of the mortgage. In such case the lien of the mortgagee is not affected

by the mechanic's lien, and we see no reason why the person holding the legal title as security should be placed in a less secure position than if he held only a mortgage." Citing Salzer Lumber Co. v. Claflin, 16 N. D. 601, 113 N. W. 1036.

In the case at bar the Beggs estate and Williams continued to be absolute owners of an undivided one-half interest; they do not occupy the position of mere mortgagees, and it is apparent from the correspondence that they desired the work done upon terms that would make it inure to their benefit, free and clear of lien—doubtless contemplating at the time that the lien, unless released, would attach to their beneficial or equitable interest. It may well be doubted whether a stipulation between tenants in common or between a vendor and a vendee, to the effect that the interest of one tenant in common or of a vendor is to be protected from a mechanic's lien for improvements to be made under the direction of a cotenant or a vendee, is binding upon the one entitled to the lien who acts in ignorance of the limitation. See Henderson v. Connelly, 123 Ill. 98, 5 Am. St. Rep. 490, 14 N. E. 1; Malmgren v. Phinney, 50 Minn. 457, 18 L.R.A. 753, 52 N. W. 915; Miller v. Mead, 127 N. Y. 544, 13 L.R.A. 701, 28 N. E. 387. We think it can not be said that a beneficial owner of an undivided interest in land, as a tenant in common, is not a person for whose immediate use and benefit an improvement is made or labor performed, within §§ 6823 and 6828, supra. Section 6168, Comp. Laws 1913, if given the literal interpretation contended for by the appellants, would doubtless exclude from the class of owners persons holding legal title to property in trust for beneficiaries or cestuis que trust with full powers of management and control. Yet included in the definition are "guardians of minors or other persons." We are of the opinion that it is the evident purpose of the statute to consider every person an owner who has capacity to contract respecting the subject matter and that, by expressly including guardians as owners, the legislature gave concrete evidence of intention that the term should have a broad meaning. That the term "owner" is here used in a broad sense has been previously remarked. See Morgan, Ch. J., in Salzer Lumber Co. v. Claflin, supra. Ordinarily, trustees or executors with powers of management, sale and disposition have more capacity to contract with respect to improvements than guardians, and as the

statute makes contractual capacity, rather than actual enjoyment, the test of ownership for this purpose, we hold that trustees or executors with the powers contained in the will in question are "owners" within § 6828, Comp. Laws 1913. On the general question of ownership, within the mechanics' lien statute, and authority to contract so as to bind the interest of a person not directly consenting, see Rockel on Mechanics' Liens, §§ 26 to 31, inclusive.

From the foregoing it follows that the judgment appealed from is right and it is affirmed.

CHRISTIANSON, Ch. J., and JOHNSON, NUESSLE, and BURKE, JJ., concur.

## On rehearing.

BIRDZELL, J. A rehearing has been had. Counsel for the appellants has stressed all of the arguments previously advanced in support of his contentions, as stated in the original opinion. The re-argument, however, and our further consideration of the case in connection therewith have not resulted in a change of opinion with respect to our previous holdings, except in one particular. The evidence does not show that the Beggs' estate is not in course of probate. It does not show that the estate has passed into the hands of trustees possessing powers of contract such as would qualify them as owners within § 6828 of the Compiled Laws for 1913. While the statute includes persons "having the capacity to contract, including guardians of minors or other persons" as persons for whose immediate use and benefit an improvement is made which may result in a mechanic's lien, yet we are of the opinion that the lien would not arise unless such person is authorized to engage in the particular transaction. In other words, the capacity contemplated by the statute is subject to the pursuit of regular authority under direction of the probate court or of a court of general jurisdiction administering a trust. In this respect, we are of the opinion that counsel's contention must be supported. Hence, while guardians or executors or administrators are owners within the mechanic's lien statute, they can not subject the property under their charge to a mechanic's lien, unless the improvement be authorized by

the court to whose jurisdiction as such officers they are subject; or, if in the hands of trustees, it must clearly appear that they act within the trust. Since the record in the present case does not show that the executors acted in pursuance of authority granted by the court in which the estate was being administered, we think it follows that the mechanic's lien is not binding upon the estate. However, the record shows, as indicated in the previous opinion, that the executors of the Beggs estate, who knew that the improvement was being placed upon the property, were likewise heirs and devisees under the will. They were, therefore, beneficial owners. The judgment appealed from must be modified to the extent of decreeing the lien to be valid as against the undivided interests of such beneficiaries. As so modified, the judgment is affirmed; neither party to recover costs on appeal.

CHRISTIANSON, Ch. J., and JOHNSON, BURKE, and NUESSLE, JJ., concur.