*J. M. Clark,* with him *W. H. Pratt* and *Chalfant & Over,* for appellees.

Per Curiam, January 2, 1915:

This bill was filed by a grantee of land by a conveyance in fee simple to recover from the heirs of the grantor losses alleged to have been sustained while acting as a mere trustee to hold the title and mortgage and convey the land for the benefit of the grantor. The findings of fact are that no trust, express or implied, was established. These findings were supported by the evidence and they fully sustained the decree dismissing the bill which is now affirmed at the cost of the appellant.

---

# Watson Land and Improvement Company *v.* C. H. Salyers.

*Mechanics' liens—Priority—Purchase-money mortgage subordinated to construction lien.*

The fact that a vendor of land agrees that a purchase-money mortgage shall be subordinated in lien to one given by the purchaser to obtain money with which to erect a building on the premises does not render it subordinate to mechanics' liens which should have been paid by the purchaser out of money realized on the loan.

Argued Oct. 20, 1914. Appeal, No. 207, Oct. T., 1914, by Pittsburgh Hardwood Door Company, Mechanics' Lien Creditor on Mechanics' Liens, Nos. 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103 and 104, Oct. T., 1913, from judgment of C. P. Allegheny Co., upon execution in case of Watson Land and Improvement Company, a Corporation, v. C. H. Salyers, on exceptions of Pittsburgh Hardwood Door Company, et al, Mechanics' Lien Creditors, to the Sheriff's Special Return. Before Fell, C. J., Brown, Mestrezat, Stewart and Moschzisker, JJ. Affirmed.

Exceptions to sheriff's special return.

The court overruled the exceptions and confirmed absolutely the sheriff's return in an opinion by FORD, J., as follows:

On April 17, 1912, the Watson Land and Improvement Company made a contract with C. H. Salyers for the sale of fifteen lots in the plan of the Watson Land and Improvement Company situate on Watson boulevard and East streets, Pittsburgh. By this contract or agreement a purchase-money mortgage was to be given securing the payment of the consideration-money, $17,400.

The contract recites that Salyers "desires to purchase the said lots for the purpose of erecting dwelling houses thereon in accordance with plans and specifications to be submitted to" the land company and Salyers agrees to "erect on each lot a dwelling house in accordance with plans and specifications to be submitted to" the land company and to be satisfactory to the party of the first part, "all of which houses shall be completed within ten months from the execution of this agreement."

It was further agreed that the purchase-money mortgage shall contain provisions for postponing it, first to and in favor of a construction loan or loans and also after the satisfaction of such construction loans to and in favor of a mortgage or mortgages in an amount not to exceed in the aggregate the actual outlay of the party of the second part (Salyers) in the construction of said houses......In calculating the outlay no credit shall be taken by said party of the second part for his own time nor for any profit but only for moneys actually expended by him.

In compliance with the terms of the agreement the land company by deed dated July 10th and recorded July 12, 1912, conveyed the lots of C. H. Salyers and on the same day C. H. Salyers executed and delivered to the land company a purchase-money mortgage. The mortgage was for the sum of $17,400, the full purchase-price

of the lots and contained the provision for postponement and release stipulated in the agreement.

On the same day the parties entered into a supplemental agreement reciting the deed and mortgage. Salyers agreed to begin the construction of the houses within ten days.

On October 8, 1912, C. H. Salyers executed a bond and mortgage in favor of Roy L. McGrew. The mortgage is recorded in Mortgage Book, Vol. 1490, page 486, and by its terms was an advance money construction loan in the sum of $35,000 payable in nine months and covering twelve of the fifteen lots conveyed by the land company and described in the purchase-money mortgage from Salyers.

On October 14, 1912, the Watson Land and Improvement Company postponed of record the lien of the purchase-money mortgage to the lien of the said mortgage securing the construction loan on the twelve lots.

Thereafter—the date not definitely appearing—C. H. Salyers began the erection of twelve houses on the lots covered by the mortgage securing the construction loan. Salyers failing to pay for the material and labor for the houses, mechanics' liens were filed by the claimants.

On August 13, 1913, the land company, alleging default in payment, entered judgment on the bond secured by the purchase-money mortgage given by Salyers to the land company. A fi. fa. was issued thereon and so proceeded in that on November 15, 1913, the fifteen lots covered by the purchase-money mortgage were sold to the land company, the plaintiff in error, for the sum of $7,500. The sheriff made special return of the sale to court, distributing the fund less the costs and taxes to the plaintiff. To this distribution the mechanics' lien creditors filed exceptions and the case is now before the court.

The exceptants filed six exceptions, but state their position under two heads:

(1) As between Salyers and the land company the

agreements under which Salyers purchased constituted an improvement contract and the estate of both parties or their interest therein is bound by the mechanics' liens and therefore these liens are prior to the lien of the purchase-money mortgage.

(2) There is a specific contract between Salyers and the land company under which the mortgage of the land company shall be postponed to the cost of the houses and for this reason the mechanics' liens are preferred over the lien of the purchase-money mortgage.

The right of a tenant for years, under what has been called an "improvement lease," to subject the demised premises to mechanics' liens grows out of his position, as it were, of a contractor or agent. "Where the tenant contracts with the landlord to build or add to or repair a building for compensation to be made by the landlord either in money or by occupation and use of the premises, he is regarded as an ordinary contractor to build or repair......The tenant is the landlord's agent holding possession for him, building and repairing for him and at his ultimate cost." Hall v. Parker, 94, Pa. 109.

Our attention has been called to no case in this State in which the question now considered was determined.

In Lee v. Gibson, 104 Tenn. 698, it was said "A mechanics' lien is superior to a vendor's where, as an inducement to his conveyance of the land, the vendor stipulates that certain buildings and improvements shall be erected thereon, according to plans and specifications and at a price to be approved by himself and agrees to advance and loan a certain sum to the vendee for this purpose."

In Henderson v. Connelly, 123 Ill. 98, the syllabus reads: "Where the vendor, by his contract, expressly authorizes his vendee to erect a building on the premises agreeing to advance money to aid such improvement as the work progresses, and before any termination of the contract and notice thereof a mechanic furnishes materials and performs labor in the erection of such build-

ing the latter will not be required to look alone to the title held by the vendee but may enforce his lien against the legal as well as the equitable owner."

In the cases cited as well as in Hill v. Gill, 40 Minn. 441, the vendor had an immediate interest in the building, agreed to advance the moneys necessary to meet the cost of construction and the vendee was regarded as the agent of the vendor.

In the case at bar it is not contended, nor is there testimony, that the land company agreed to advance or loan money in aid of the erection of the buildings. Its covenant was to postpone the lien of the purchase-money mortgage, first, in favor of a construction loan or loans and, second, after the satisfaction of the construction loan, in favor of a mortgage or mortgages not to exceed the aggregate of the actual cost of the buildings.

The fact that a vendor agrees that the purchase-money mortgage shall be subordinate to one given by the purchaser to obtain money with which to erect a building on the premises does not render it subordinate to a mechanics' lien which should have been paid by the purchaser out of the moneys realized on the loan: Hoagland v. Lowe, 39 Nebr. 397.

From the evidence it appears that C. H. Salyers was a building contractor, described by one of the witnesses as "a man who builds houses and sells them. He is an operator." It is clear that Mr. Salyers desired to purchase the property and that the land company was willing to sell at a fixed and definite sum, that sum to be wholly secured by a purchase-money mortgage. The purpose for which the company would postpone was clearly expressed in the mortgage and the plaintiff's covenant was in part performed by postponing to the $35,000 mortgage. Salyers' negotiating and placing the $35,000 mortgage was apparently to provide a fund from which to pay contractors, material men and laborers. If it was not so applied the failure does not seem to be the result of connivance or fraud on the part of the land

company. The land company was under no duty to see to the application of the moneys realized on the construction loan: Moroney's App., 24 Pa. 372.

That the land company did not fully perform its agreement was due to no default or neglect on its part. The construction mortgage was not paid off and it does not appear that Salyers negotiated the second mortgage or series of mortgages. He defaulted in payment of the purchase-money mortgage and the land company was within its rights in proceeding on the bond.

The claimants knew of the purchase-money mortgage and of the construction mortgage and the terms of each. If they examined the records they found that a fund had been created for the purpose of meeting the cost of construction. They might have protected themselves by notifying the land company or by notice to Roy L. McGrew.

The court dismissed the exceptions. The mechanics' lien claimants appealed.

*Error assigned* was in dismissing the exceptions to the return.

*R. B. Ivory,* with him *J. C. Bily,* for appellant.—A mortgagee who encourages the improvement of the mortgaged property by an agreement to subordinate his lien to the cost thereof, is, as to persons furnishing labor and material for use thereon upon the faith of his promise, a promoter of such improvement, and their liens for labor and material are entitled to priority over his mortgage: Woodward v. Leiby, 36 Pa. 437; Leiby v. Wilson, 40 Pa. 63; Leslie v. Leonard, 10 Pa. Superior Ct. 548; McFall v. McKeesport & Youghiogheny Ice Co., 123 Pa. 253; Lee v. Gibson, 104 Tenn. 698; Bohn Mfg. Co. v. Kountze, 30 Neb. 719; Henderson v. Connelly, 123 Ill. 98; Hill v. Gill, 40 Minn. 441; Millsap v. Ball, 30 Neb. 728.

*W. W. Stoner,* of *J. M. Stoner & Sons,* with him *Weil & Thorp,* for appellees.—It is settled law that not only a grantor's lien for purchase-money, but as well the lien of an advance money mortgage placed on the record prior to the commencement of the improvements, takes pri-ority over the liens of mechanics erecting the same: Page v. Carr, 232 Pa. 374.

In this case an unconditional deed was delivered to vendee for the property described therein and a mortgage was taken for the full purchase price. As an inducement to the grantor to accept a mortgage for the full amount of the consideration, vendee agreed to erect houses on the property sold and the grantor and mortgagee stated in the mortgage explicitly its obligations as to postponement and release. This agreement to erect houses was, therefore, not part of the consideration for the purchase but was an inducement to the vendor to accept as security for such consideration a purchase-money mortgage for the full amount: Preston v. Wolfshafer, 47 Pitts. L. J. (O. S.) 103.

PER CURIAM, January 2, 1915:·

The order appealed from is affirmed for the reasons stated in the opinion of Judge FORD.

---

# Hathaway, Appellant, *v.* Newell.

*Equity—Findings of fact—Credibility of witnesses—Appeals.*
Findings of fact by a chancellor, upon conflicting testimony involving a consideration of the credibility of witnesses, will not be set aside by an appellate court, unless manifest error is shown, and where a bill in equity for discovery and an accounting was dismissed because the chancellor regarded the testimony in support thereof as inaccurate and unreliable, the decree was affirmed.

Argued Oct. 21, 1914. Appeal, No. 162, Oct. T., 1914, from decree of C. P. Allegheny Co., Jan. T., 1913, No.