[No. 21914. Department Two. December 5, 1929.]

A. L. DUNN, *Plaintiff*, v. THEODORE WOLF *et al., Defendants,* MUTUAL SAVINGS AND LOAN ASSOCIATION, *Appellant,* REN REAL ESTATE EXCHANGE, *Respondent.*[1]

[1]Reported in 282 Pac. 842.

*Lewis & Black* and *Howard Waterman*, for appellant.

*Hyland, Elvidge & Alvord* and *Tucker & Tucker*, for respondent.

FRENCH, J.—In October, 1927, the Ren Real Estate Exchange sold and conveyed to one Theodore Wolf a lot located in the Latona addition to Seattle. The purchase price of the property was $1,200, of which $200 was paid in cash and $1,000 in notes secured by a mortgage. The purchase money mortgage contained the following clause:

"Consent is hereby given to the placing of a new mortgage on said premises in as large a sum as a reliable mortgage company will place thereon, the same to be a first mortgage, to which this mortgage will be subject, provided that at said time this mortgage and the note secured thereby shall be in good standing in every respect."

Thereafter Wolf began the construction of a house upon the property in accordance with certain plans and specifications. Also he borrowed from appellant $2,800. It is admitted that the appellant is a reputable mortgage company, and that $2,800 was as large an amount as a reliable mortgage company would loan upon such premises. There were some intervening transactions relative to this property which we deem immaterial.

After the recording of respondent's mortgage and before the execution of appellant's mortgage, certain parties acquired liens by beginning the delivery of material for the house which was to be constructed; the aggregate amount of these liens being about $1,000.

By appropriate proceedings in the lower court in which all the parties interested in the property appeared, the lower court held that this property should be sold and that the proceeds of the sale should be distributed as follows: First, to pay the costs; second,

to pay to the Mutual Savings and Loan Association an amount equal to the claim of the Ren Real Estate Exchange; third, to pay the amount of the liens; fourth to pay the Mutual Savings and Loan Association an amount equal to the balance of the sum due it, less the amount of all of the payments theretofore made; fifth, to pay to the Ren Real Estate Exchange the full amount due on its mortgage, and then to pay the balance of the Mutual Savings and Loan Association mortgage.

The property being of the value it is, and the lienors having assigned their judgments to the Mutual Savings and Loan Association, the only parties in interest are the appellant, Mutual Savings and Loan Association, and the respondent, Ren Real Estate Exchange.

■ It is first contended that, under the facts of this case, the Ren mortgage becomes junior to the mechanics' liens; but the facts in this case show conclusively that the Ren mortgage was recorded long prior to the time when the furnishing of material began, and under the well settled rule of this state, the mortgage being of record and there being no intervening facts from which we can hold that Wolf was acting as the agent of the Ren Real Estate Exchange, the liens would be subsequent to the Ren mortgage.

■ It is also claimed that the appellant had a right to pay the adjudicated mechanics' liens which were prior to its mortgage and to add such payments to the indebtedness secured by its mortgage. Generally speaking, this statement of the law is correct, and it is so recognized by this court. And it is generally true as between the owner of the property and the holder of the incumbrance, because, as in this case, the mortgage usually so provides; but it must be remembered here that the Ren mortgage, which was a purchase mortgage, was recorded immediately, and

was prior to any mechanic's lien which would attach to the property, and the plain reading of the provision of the purchase money mortgage above quoted indicates that it was the clear intent of the parties that the mortgage should be subject only to the $2,800 (admittedly as large an amount as a reputable company would place on the property), and by the recording of the mortgage, it was clearly indicated that it was not the intention of the respondent to permit the mortgage to become subsequent to the mechanics' liens. *Fuller & Co. v. McClure*, 48 Cal. 185, 191 Pac. 1027; *Althouse v. Provident Mutual Building & Loan Ass'n*, 59 Cal. 31, 209 Pac. 1018.

Appellant also claims that the equities of the case are all with it because of the fact that it was evidently within the contemplation of the parties at the time the Ren mortgage was executed that a building should be placed thereon which would cost more than the amount of appellant's mortgage, but we think the real agreement of the parties was that the Ren Real Estate Exchange agreed to, and intended to be subordinate to, but one thing, and that was as large a building mortgage as a reputable company would place on the property. Appellant knew at the time it made its loan that respondent had a mortgage on the property; knew that the building was in course of construction; knew the possibility of liens; knew that those liens, if any developed, would be superior to its mortgage. The slightest inquiry would disclose that the liens, if any were filed, would be inferior to the Ren mortgage. Appellant might have taken a bond to protect itself; might have demanded an agreement that the Ren Company subordinate itself not only to the mortgage, but to all sums which appellant deemed necessary to pay to protect its security, or might have refused to make the loan. We can find no superior equities in favor of appellant on this state of facts.

Five cases have been cited which, it is claimed, are controlling. Some of these cases are cited by both appellant and respondent. They are: *Hoag v. Sayre,* 33 N. J. Eq., 552; *Ohio Savings Ass'n v. Bell,* 25 Ohio App. 84, 158 N. E. 548; *Walbridge v. Barrett,* 21 Ohio Cir. Ct. 522; *Malmgren v. Phinney,* 50 Minn. 457, 52 N. W. 915, 18 L. R. A. 753, and *Miller v. Stoddard,* 54 Minn. 486, 56 N. W. 131.

We think a critical reading of the New Jersey case, *supra,* shows the distribution of the money to have been made exactly as the trial court made in this case. The case from the appellate court of Ohio, we think, supports appellant's contention.

From a reading of the *Malmgren* case, *supra,* the specific directions given seem to support appellant's contention, but the reasoning in the case supports respondent's contention; and the later case of *Miller v. Stoddard,* 54 Minn. 486, 56 N. W. 131, citing the *Malmgren* case as authority therefor, directs the payments in accordance with the contention of respondent.

The case of *Schill v. Korthof,* 147 Minn. 443, 180 N. W. 703, which also cites the *Malmgren* case, *supra,* indicates that the *Malmgren* case did not hold as appellant contends. Respondent's position is also fortified by the reasoning in the case of *Watson Land & Improvement Co. v. Salyers,* 247 Pa. St. 454, 93 Atl. 495, Ann. Cas. 1916B 672.

We think the judgment of the trial court correctly construed the agreement between the parties, and was in accordance with the doctrine laid down in the majority of the adjudicated cases to which our attention has been directed.

Affirmed.

MITCHELL, C. J., FULLERTON, HOLCOMB, and MAIN, JJ., concur.