[L. A. No. 11166. In Bank.—March 29, 1932.]

COMMUNITY LUMBER COMPANY OF BALDWIN PARK (a Corporation) et al., Respondents, v. THE CALIFORNIA PUBLISHING COMPANY (a Corporation) et al., Defendants; JAMES A. KEENEY et al., Appellants; CALIFORNIA GUARANTY CORPORATION (a Corporation), Intervener and Appellant.

Horace P. Babson, J. H. Van Law and A. G. MacRobbe for Appellants.

James B. Ogg, Zach Lamar Cobb and Earl A. Littlejohns for Respondents.

PRESTON, J.—The question presented by this appeal is one as to the priority between certain mechanics' liens and two certain deeds of trust, the first made to secure building funds for the erection of a building and the second made to pay the purchase price of the lot upon which the building was to be erected.

Prior to June 1, 1925, defendant California Publishing Company desired to purchase a certain building lot owned by defendant Keeney. On May 29, 1925, a building contract was executed by said purchaser and the Union Engineering Company, which provided that the owner agreed to execute forthwith and deliver to the superintendent promissory notes in his favor aggregating $22,500, $10,000 thereof to mature on or before January 1, 1926, to be secured by a deed of trust, "which shall be and constitute a first lien on the property above described, together with the improvements thereon", and the remaining $12,500 to be covered by notes in denominations as requested by said superintendent, $6,000 thereof to mature August 1, 1925, and $6,500 September 1, 1925, the entire $12,500 in notes to be secured by deed of trust "which shall be a third lien on the above mentioned property and improvements subject only to the trust deed first above mentioned and to a trust deed which shall be a second lien on said property in an amount not to exceed $6,250". The notes all carried eight per cent per annum interest.

Said contract further provided that the superintendent accept said notes so secured as agent of the owner and use them for the payment of all material and labor necessary to erect and construct to completion said building; that the superintendent have full authority to pay subcontractors and materialmen, etc., by said trust deed notes by assignments thereof without recourse, and also to sell such portion of the notes as he might deem necessary to obtain cash needed in erection of the building. The contract further provided that the superintendent should construct the building and pay the costs as aforesaid and the superintendent thereby guaranteed that no other cost or expense should attach to the owner because of said construction; that in the event that the cost of the building could not be defrayed by the superintendent as such agent of the owner, from said notes

and proceeds thereof, the superintendent should bear and pay any such additional cost.

Thereafter the purchaser executed a $6,250 note, and deed of trust securing it, in favor of said James A. Keeney and also a $10,000 note, and deed of trust securing it, payable January 1, 1926, in favor of Union Engineering Company. Both deeds of trust named Title Guarantee and Trust Company, as trustee and, by agreement, on June 4, 1925, the latter deed of trust was recorded first and the former recorded immediately thereafter. Work on the building started June 5, 1925. The Union Engineering Company, prior to July 1, 1925, bargained to sell the $10,000 note to the intervener for $9,500, which sale was consummated as of that date and $1450 of the proceeds thereof was used in payment of claims of mechanics and materialmen. The Engineering Company appropriated the balance to its own use. Default being made in payments on the Keeney note, he duly caused a sale to be had and bought in the property. The claims of plaintiffs were not paid and they thereupon instituted this action to foreclose their liens, naming as defendants said Keeney, said trustee and others. Defendants answered and said holder of the $10,000 note intervened, pleading the note and trust deed and praying that its lien be adjudged a first lien on the premises. The court found, except as to the item of $1450 on which priority was accorded the intervener, that the claims of plaintiffs had priority. The intervener, Keeney and other defendants appealed.

The defendant Engineering Company was the agent and trustee of the owner of the lot for the benefit of the plaintiffs as laborers and materialmen. Of this fact the court found the intervener to be in possession of actual notice. This finding is amply supported by the evidence. But ordinarily such fact would not impair the purchase, in due course, of the note by the intervener for it would not necessarily know of the intent of the Engineering Company to misappropriate the proceeds thereof. However, prior to· the time of its purchase, plaintiffs' liens had attached. Having actual notice of this fact, unless the intervener was previously bound to complete the purchase, it would seem to follow that priority must be accorded the claims of plaintiffs over the advancements made by the intervener subse-

quent to such actual notice. Certainly this is true as to all sums that did not actually go to satisfy the labor and materialmen's claims.

The case before us is one where the intervener agreed to purchase the note and security as of July 1st, with knowledge that on June 5th work had begun upon the building. Under its offer to purchase it was not required to advance any payment until the roof was on and all bills paid and only $6,500 of the purchase price was to be then advanced, the remainder not being required until the building was completed and all bills paid. With actual knowledge of the terms of the agency and having purchased after accrual of the liens and not being bound to purchase except upon condition the liens were satisfied, we see no reason to withhold application of the doctrine announced in *Fuller* v. *McClure*, 48 Cal. App. 185, 191 [191 Pac. 1027, 1030].

There the question arose between a mortgage to secure future advances and a mechanic's lien. The advances not being compulsory, such of them as were made after the inception of the lien were held to be subject thereto. The court said: "Where a mortgagee has obligated himself to make advances, such advances tack, and the mortgage, when recorded, is a valid lien for all the advances actually made, although they may have been made after notice of a subsequent mortgage or encumbrance of the property. Where, however, the mortgagee is not obligated to pay the full amount of the sum named or to make all the advances mentioned in the mortgage, but it is optional with him to do so or not, and he makes advances or payments after having notice that a lien has attached in favor of a third party, his lien for payments or advances made after such notice will be postponed to that of the junior encumbrance, and each of such advances will be deemed the equivalent of a new mortgage. In such cases the mortgage lien attaches as and when the optional advancements are made." This rule is supported by the following cases: *Tapia* v. *Demartini*, 77 Cal. 383 [11 Am. St. Rep. 288, 19 Pac. 641]; *Savings & Loan Soc.* v. *Burnett*, 106 Cal. 514 [39 Pac. 922]; 41 C. J. 527, sec. 468. This doctrine is recognized and the rule again stated in *Fickling* v. *Jackman*, 203 Cal. 657, 662 [265 Pac. 810].

The fact that those cases applied to a mortgage and this applies to a conditional purchase contract does not seem to us to authorize a distinction. Here the first payment was not required until the existing liens were satisfied. If, after making the first payment, the subsequent liens were not satisfied so as to authorize the second payment, this payment would not have been compulsory, but the intervener could have rescinded the transaction and had a debt against the seller secured by lien upon the property for the amounts thus far advanced.

However, under the doctrine of *Community Lumber Co.* v. *Chute,* (L. A. No. 10156) *ante,* p. 268 [10 Pac. (2d) 57], this day decided, the liens of plaintiffs are prior to the second deed of trust held by the seller only to the extent of the unapplied portion of the proceeds of the first deed of trust. This fact necessitates a modification of paragraph "2nd" of the judgment herein to read as follows:

"2nd: If any sum thereafter remains in the hands of said Sheriff of Los Angeles County, pay to the following named plaintiffs the sums hereinafter named in subdivisions (a), (b), (c) and (d) hereof, as follows:

"(a) To Community Lumber Company of Baldwin Park, a corporation, the sum of $1387.95, together with interest thereon at the rate of 7% per annum from September 1st, 1925, and the further sum of $1.90;

"(b) To Golden State Portland Cement Company, a corporation, the sum of $3099.59, together with interest thereon at the rate of 7% per annum from August 15th, 1925, together with the further sum of $1.70;

"(c) To L. L. Root, the sum of $635.00, together with interest thereon at the rate of 7% per annum from September 15th, 1925, together with the further sum of $1.70;

"(d) To R. E. Johnson and A. L. Peel, copartners, doing business under the firm name of Johnson & Peel, the sum of $375.00, together with interest thereon at the rate of 7% per annum from September 15th, 1925, and the further sum of $1.70.

"Provided, however, that the claimants under this paragraph and under the first paragraph hereof shall not in the aggregate receive more than the sum of $10,000 and interest thereon from June 1st, 1925, at 8% per annum, and should the fund be insufficient to pay the amounts named in sub-

divisions (a), (b), (c) and (d) hereof in full, then to each claimant is to be paid his *pro rata* share thereof."

As so modified said judgment is affirmed, with costs to respondents.

Curtis, J., Shenk, J., Seawell, J., and Waste, C. J., concurred.