J. C. McCONNELL ET AL v. MORTGAGE INVESTMENT COMPANY OF EL PASO, TEXAS

No. A-5976. Decided July 24, 1957.
Rehearing overruled October 9, 1957.
(305 S.W. 2d Series 280.)

*Burgess, Scott, Rassberry & Hulse* and *Schuyler B. Marshall,* all of El Paso, for petitioner, Mortgage Investment Company of El Paso.

*Blanton & McMahon,* of Odessa, for respondents J. C. McConnell Land Company et al.

MR. JUSTICE NORVELL delivered the opinion of the Court.

This litigation involves the priority of liens covering fourteen city lots and improvements thereon situated in Odessa, Texas, namely, (a) the McConnell vendor's lien, held by petitioners, J. C. McConnell and the McConnell Land Co., Inc., (b) deed of trust lien held by respondent Mortgage Investment Company of El Paso, Texas and (c) various mechanics' and materialmen's liens which the Mortgage Investment Company also holds by assignment.

Being of the tentative opinion that the Court of Civil Appeals had erred in its construction of this Court's holding in Oriental Hotel Co. v. Griffiths, 88 Texas 574, 33 S.W. 652, 30 L.R.A. 765, we granted a writ of error.

The case was submitted to the trial court upon stipulated facts which are set forth in some detail in the opinion of the Court of Civil Appeals, McConnell v. Mortgage Investment Company of El Paso, Texas, 292 S.W. 2d 636. We shall accordingly confine our statement here strictly to those facts deemed essential to our holdings hereinafter set forth.

The events giving rise to the present controversy all occurred during the year 1953. The McConnell vendor's liens had their origin in two conveyances executed by J. C. McConnell and J. C. McConnell Land Co., Inc., dated February 25th whereby the fourteen lots here involved (among others) were conveyed to Chaney & Singleton Brothers, a copartnership which we shall refer to as Chaney & Singleton in accordance with the usage adopted by the Court of Civil Appeals.

On April 1st., a date admittedly prior to the commencement of construction activities upon the fourteen lots in controversy, McConnell or the corporation bearing his name held valid subsisting first vendor's liens against the property. The amounts secured by these liens aggregated the principal sum of $17,500.00 at the time of trial.

Between April 2nd and 5th, Chaney & Singleton had surveys made and the lots staked so as to mark the corners of each of the fourteen dwelling houses they proposed to build thereon. Prior to April 15th, the date of the Mortgage Investment Company deed of trust, it appears that plans and specifications for a fourteen dwelling house project had been prepared; poles had been set for electric lines; batter boards had been placed around the building sites; trenchs had been dug; reinforcing steel put in place and plumbing roughed in preparatory to pouring concrete slabs for foundations.

On April 15th, Chaney & Singleton, as owner of the fourteen lots in question, executed a deed of trust to S. M. Murchison, trustee, to secure the payment of a promissory note for the principal sum of $119,300.00 payable to the order of Mortgage Investment Company. In connection with this deed of trust, Chaney & Singleton, joined by John O'Sullivan as surety, executed a written instrument designated as an "Owner-Contractor Bond" which, however, contains a number of contractual obligations aside from the surety provision. Chaney & Singleton obligated themselves to construct fourteen dwelling houses upon the property and in turn Mortgage Investment Company by acceptance of such "Owner-Contractor Bond" agreed to advance to Chaney & Singleton against the $119,-300.00 note as the work progressed upon the proposed construction. The agreement was apparently prepared by filling in a mimeographed form and the spaces for the day and month of execution were left blank, but reference was made to the deed of trust of "even date." The document was signed by John O'Sullivan, the surety, in El Paso on April 17th then mailed to Chaney & Singleton in Odessa who executed the same and mailed it to Mortgage Investment Company in El Paso, where it was received on April 20th.

On April 17th J. C. McConnell and J. C. McConnel Land Co., Inc., executed agreements whereby they agreed to subordinate their vendor's liens to the Mortgage Investment Company's deed of trust.

In accordance with the understanding whereby Mortgage Investment Company were to advance money on the $119,-300.00 note as the work progressed, said company paid over to Chaney & Singleton sums totalling $73,450.00 during the months of April, May and June. Chaney & Singleton ran into financial difficulties shortly thereafter and failed to complete

the building project with the result that numerous claims against the co-partnership and liens against the property were asserted. Mortgage Investment Company thereupon purchased claims against Chaney & Singleton which were secured by statutory or constitutional liens against the fourteen lots covered by their deed of trust and expended the sum of $33,366.20 in acquiring claims having a face value of $59,187.61. It appears that all of the labor and materials giving rise to the mechanics' and materialmen's liens was furnished after April 15th and prior to July 29, 1953. Apparently those who did the surveying, set the baffle boards, dug the trenches, etc., have long since been paid.

Based upon the above state of facts, it is the position of Mortgage Investment Company that:

a. Work upon the construction project began prior to April 15th.

b. The mechanics' and materialmen's liens purchased by it were therefore superior to the deed of trust lien executed by Chaney & Singleton on April 15th.

c. The McConnell vendor's liens having been subordinated to the deed of trust lien was consequently inferior to the mechanics' and materialmen's liens. Shaddix v. National Surety Co., 221 Ala. 268, 128 So. 220, 224.

The situation is somewhat unusual in that we have a mortgage company asserting that its deed of trust lien is inferior to mechanics' and materialmen's liens based upon labor and materials furnished after the date of the deed of trust. However the effect of accepting this contention insofar as the petitioners' vendor's liens are concerned would be to place them last in the category of priorities.

Petitioners' primary contention is that heir vendor's liens were restored to a position of first priority because the Mortgage Investment Company by accepting the "Owner-Contractor Bond" on April 20th in legal effect rendered their deed of trust lien inferior to any and all mechanics' and materialmen's liens that might thereafter be fixed against the premises and that such action had the effect of vitiating the subordination agreement of April 17th. Petitioners however vigorously counter the proposition that the mechanics' and materialmen's liens oc-

cupy a place of first priority as to both the deed of trust and vendor's liens because construction work was begun prior to April 15th, the date of the execution of the deed of trust to which the vendor's liens were subordinated by agreement of April 17th.

While the stipulation of the parties listed numerous items and accounts for labor and materials, it was simply agreed that such accounts were secured by valid statutory and constitutional liens. The Court of Civil Appeals held that the statutory mechanics' and materialmen's liens "related back" to the beginning of the work upon the project, but stated that it had found no authority for applying this doctrine to constitutional liens. This holding necessitated a remand of this case so as to determine which of the mechanics' and materialmen's liens were statutory and which were constitutional in nature. Priorities as established by the Court of Civil Appeals were as follows: (1) the statutory mechanics' and materialmen's liens, (2) the deed of trust lien, (3) the vendor's liens and (4) the mechanics' and materialmen's liens which derived their validity from the constitution but which had not been fixed in accordance with statutory provisions.

■ We first consider the matter of priority as between the statutory mechanics' and materialmen's liens and the Mortgage Investment Company's deed of trust lien. This is the controlling question in the case and involves an examination of the "relation back" theory of mechanics' and materialmen's liens under the Texas Statutes. As above pointed out respondents contend that the mechanics' and materialmen's liens had their inception at the beginning of the work upon the project. This contention was sustained by the Court of Civil Appeals upon authority of Oriental Hotel Co. v. Griffiths, 88 Texas 574, 33 S.W. 652, 30 L.R.A. 765. The Court said:

"It is clear at the outset that certain work had started on the project before plaintiff's Deed of Trust was executed. It has been held repeatedly that the liens of materialmen and laborers are superior to any mortgage created after the work has begun, and that all such liens shall be on an equal basis, whether by materialmen or laborers, so long as they are for work done or material supplied for the erection or completion of the building. It has also been established that each lien thereby properly created shall be equal to all other such liens, regardless of inception—that is, the lien for he who completes the last bit of building is equal in time and dignity to the lien

of he who has labored on the erection of same, the courts holding that all liens have their inception at the same time, to-wit, the beginning of the erection or construction of the building or buildings, and that all of said liens are superior to any mortgage executed after the erection of the building is begun. Oriental Hotel Co. v. Griffiths, 88 Texas 574, 33 S.W. 652, 30 L.R.A. 765; Tomlinson v. Higginbotham, Texas Civ. App., 229 S.W. 2d 920; 292 S.W. 2d 638."

As we understand the rule of the Oriental Hotel Company case it is a comparatively narrow one and its holding is strictly confined to a set of facts similar to that disclosed in the opinion. The controlling feature or circumstance of the case is the existence of a general contract between an owner on the one hand and a building contractor on the other. This view is compelled when we take into consideration the fact that the opinion in the Oriental Hotel Company case (1895) was written by Mr. Justice Brown who some six years later also prepared the opinion in D. Sullivan & Co. v. Texas Briquette & Coal Company, 94 Texas 541, 63 S.W. 307 which discusses and explains the holding of the earlier case.

In the Oriental Hotel Company case this Court was concerned primarily with two issues. First, the extent of the coverage of the lien, that is, whether all liens extended to the premises as a whole, or whether certain claimants had preferences as to a portion of the structure, namely the basement and foundation, and Secondly, the time or date of the inception of the mechanics' and materialmen's liens. With the first question we are in no wise here concerned. The all important element in the present litigation is the time of inception of the mechanics' and materialmen's liens. Upon this point Mr. Justice Brown in the Oriental Hotel Company case referred to the case of Trammel & Co. v. Mount, 68 Texas 210, 4 S.W. 377, 379, construing Article 3171, R.S. 1879 as amended by Acts 1885, 19th Leg., ch. 66, p. 63 (9 Gammel's Laws of Texas 683), wherein it was held that "The lien of a mechanic, though not fixed before the record of the contract or bill of particulars, when it is fixed, relates back to the time when the work was performed or the material furnished, and hence takes precedence of all claims to the property improved which have been fastened upon it since that time."

The statutory provision was changed in 1889 so as to substitute the word "inception" for the word "accrual" in the following proviso: "provided, any lien, incumbrance, or mort-

gage existing on the land or improvements at the time of the *inception* (accrual) of the lien herein provided for, shall not be affected thereby." Acts 1889, 21st Leg., ch. 98, p. 110 (9 Gammel's Laws of Texas 1138). Art. 5459, Vernon's Texas Civ. Stat. While it might be considered that the words 'inception" and "accrual" have similar meanings insofar as liens are concerned, Judge Brown reasoned that some change in the "relation back" rule of Trammel & Co. v. Mount was intended by the Legislature. In the Oriental Hotel Company case it appeared that on February 28, 1890 John Griffiths, as contractor, entered into a general construction contract with the hotel company as owner whereby he agreed to construct a proposed hotel building according to plans and specifications for the sum of $315,000.00 and shortly thereafter entered upon the work contemplated by the contract. The building was completed but certain claims for labor and material were not paid and a dispute arose between the holders of such claims which were secured by statutory mechanics' and materialmen's liens and the holders of bonds secured by a deed of trust against the property which was executed by the hotel company on May 1, 1890 and recorded twenty days thereafter.

The Supreme Court held that the amendment of the statute substituting "inception" for "accrual" modified the doctrine of "relation back" as declared in Trammel & Co. v. Mount so that the mechanics' and materialmen's liens "related back" and had their inception as of the date of the Griffiths' contract of February 28, 1890 rather than the dates upon which the labor was performed or the materials furnished. Thus priority was given to such liens although the labor and materials giving rise to such liens were furnished after the date of the deed of trust (May 1, 1890) securing the bonds. The Griffiths' general construction contract is given controlling importance as fixing the date of the inception of the mechanics' and materialmen's liens. This Court said: "The word 'inception' means 'initial stage.' Cent. Dict. It does not refer to a state of actual existence, but to a condition of things or circumstances from which the thing may develop. When the building has been projected and construction of it entered upon,—*that is, contracted for,* —the circumstances exist out of which all future contracts for labor and material necessary to its completion may arise, and for all such labor and material a common lien is given by the statute; and in this state of circumstances the lien to secure each has its 'inception.'" (Italics supplied).

That the holding in the Oriental Hotel Company case is

bottomed squarely upon the circumstance that the building has been projected and a contract for its construction executed by the owner and a contractor is made clear by Judge Brown's later opinion in the Texas Briquette case (D. Sullivan & Co. v. Texas Briquette & Coal Co., 94 Texas 541, 63 S.W. 307.) The Court of Civil Appeals had in effect ignored the requirement that the building or improvements be "contracted for" in holding that the mechanics' and materialmen's liens for labor and material used to construct such improvements took precedence over the deed of trust lien. It was said that:

"The money borrowed by the bonds and mortgage was, as that instrument recited, raised to complete the plant. The mortgage security extended to the improvements to be made. The work had been projected and was in contemplation when the mortgage was made, and the money was borrowed for the very purpose of making improvement, and the mortgage so stated. The district judge doubtless considered that the rule announced in Oriental Hotel Co. v. Griffiths [88 Texas 574,] 33 S.W. 652, 30 L.R.A. 765, applied to the facts of this case, and we are inclined to hold, in view of the expressions in the opinion in that case and the case it cites, that he did not err." D. Sullivan & Co. v. Texas Briquette & Coal Co., 60 S.W. 330, 331.

In discussing this holding Mr. Justice Brown said (94 Texas 541, 545, 63 S.W. 307, 308):

"In support of its opinion, the Court of Civil Appeals quotes the provision of the deed of trust before copied which recited that the bonds were to be issued for the purpose of raising money to improve the property. And that honorable court seems to hold that the contemplation of an improvement or the definite determination on the part of the owner of the property to improve it fixes the time when the liens of the materialmen, laborers and others attach to the property. If it were held that the mere fact that an intention existed in the mind of the mortgagor to use the funds raised by the mortgage in the improvement of property creates a lien in favor of all persons who should thereafter contract with him for making that improvement, it would broaden the constitutional and statutory provisions so as to create many complications in this class of business. There is no evidence that we have been able to discover in this record— and none has been pointed out by the able attorney for the defendants in error—which shows that at the time the mortgage was executed any contract for this

improvement had been let, or that the particular improvements were intended to be provided for by the making of that mortgage. The inception of the liens which are claimed in this case by the defendants in error was subsequent to the date of the lien of the mortgage to secure the bonds asserted by the plaintiffs in error, and was therefore subordinate to the lien of that mortgage.

"The honorable Court of Civil Appeals cites the case of Oriental Hotel Company v. Griffiths in support of its decision in this case. We think the distinction between the two cases is broad and perfectly plain. *In that case Griffiths had entered into a contract with the Oriental Hotel Company for the construction, upon the lot which it then owned, of a building according to specifications then furnished and embracing all work which was subsequently done or for which material was furnished by the persons who claimed liens in that case.* The bonds were issued and the mortgage given for the purpose of securing the payment of that contract, and the deed of trust itself secured a lien upon the house to be built. A separate agreement provided that the funds should be placed in the hands of a trustee to be paid out upon the estimates of the architect as the building progressed. This court held, that, in issuing those bonds and in making the deed of trust to secure them, the completion of that contract according to the specifications was in contemplation of the parties, *and that the liens for all material furnished and labor done in the performance of that contract had their 'inception' when the contract was made,* which was prior to the time the deed of trust to secure the bonds took effect. While we believe that the decision in that case is amply sustained by the law and correctly made, we are of opinion that the facts of the case demanded and the opinion went as far as the law justifies to sustain such liens, which are much favored by our Constitution and laws." (Italics supplied.)

In the present case there is no general construction contract similar to the Oriental Hotel Company — Griffiths' contract antedating the Mortgage Investment Company's deed of trust. An extension of the doctrine of the Oriental Hotel Company case would be required to support the holdings of the courts below. It would be necessary to say that the "beginning of the work" is the same as "the projection of the building and the execution of a contract for its construction." In 1901 this Court refused to make a similarly proposed extension—but in effect held that the doctrine announced in the Oriental Hotel Company case "went as far as the law justifies,"

and hence should not be expanded to apply to factual situations not strictly analogous to those disclosed in the reported opinion.

We do not regard Tomlinson v. Higginbotham, Texas Civ. App., 229 S.W. 2d 920, 922, no writ history, as supporting the proposition that mechanics' and materialmen's liens relate back to the beginning of the work upon the building. In the cited case, Field Brothers as owners of real property, were engaged in constructing improvements thereon and solicited a loan from Tomlinson. Certain mechanics and materialmen had furnished labor and materials for construction purposes prior to the date of the Tomlinson deed of trust. They had not however attempted to fix their liens by filing affidavits in the office of the county clerk as required by statute. The Court of Civil Appeals, while recognizing the priority of the mechanics' and materialmen's liens, did not hold that such liens had their inception at the time of the beginning of the work upon the building. Such liens obviously could not have related back to the date of a contract for the construction of the building because there was no such contract in existence. The owners of the property (as in the present case) were doing the work and occupying the position usually held by a general contractor. As to the doctrine of "relation back," the Court in the Tomlinson case said, "The law is well settled that while a building is under construction, any person who takes a mortgage thereon does so with notice of any mechanics' or materialmen's liens. It is his duty to make inquiry as to whether or not *labor has been performed or material furnished* within the statutory period for filing liens for which payment has not been made." (Italics supplied). The case does not hold that *in the absence of a general contract between an owner and a contractor*, a mechanics' or materialmen's liens for labor or materials furnished *after* the date of a deed of trust would nevertheless take priority over such contractual lien.

In Quinn v. Dickinson, 146 S.W. 993, no writ history, the Amarillo Court of Civil Appeals considered the rule of the Oriental Hotel Company case in the light of the Texas Briquette decision and concluded that the all important circumstance in the case was the existence of a general construction contract calling for the construction of the building according to plans and specifications.

Similarly in Pierce v. Mays, 277 S.W. 2d 155, affirmed,

Mays v. Pierce, 154 Texas 489, 281 S.W. 2d 79, the same Court said:

"As to the remaining mechanics' and materialmen's liens, the record reveals no general contract with the owner as to the erection of the improvements. The work and materials were furnished directly to the owner by the various mechanics and materialmen individually. Therefore, these various lien securing debts as to material and labor furnished had their inception as of the date the same were furnished. Crabb v. William Cameron & Co., Inc., Texas Com. App., 63 S.W. 2d 367. As revealed by the trial court's findings of fact, the inception of the liens of these various remaining claimants was subsequent to the execution and recordation of the Mays' deed of trust and such liens would therefore be inferior to the said deed of trust. * * *"

See Allen Wight, Mechanic's Liens, 2 Texas Law Review 77, discussing Oriental Hotel Company v. Griffiths, also, 29 Texas Jur. 558, 560, Mechanic's Liens, Sec. 84, 91.

■ We are in agreement with the holding of the Court of Civil Appeals (expressed upon rehearing, loc. cit. 292 S.W. 2d 641) rejecting the contention that the purchase of mechanics' and materialmen's liens by Mortgage Investment Company was the equivalent of advancing money to Chaney & Singleton under the deed of trust. While the note upon its face was for the principal sum of $119,300.00, the agreement between Chaney & Singleton and Mortgage Investment Company obligated the latter to advance monies to the borrower only when the borrower had completed certain specified portions of the construction and such work had been approved by the inspectors of the Federal Housing Administration. Mortgage Investment Company was not bound to advance money to pay any and all bills that Chany & Singleton might incur during the course of the construction work. The sum of $73,450.00 was all that was actually advanced by Mortgage Investment Company under the deed of trust and it follows that the deed of trust lien could not have been foreclosed for an amount in excess thereof. The McConnel subordination agreements expressly provided that in the event of a foreclosure sale any and all proceeds realized which were in excess of the amount necessary to discharge the indebtedness secured by the deed of trust should be paid to the holders of the vendor's liens. The claims represented by the mechanics' and materialmen's liens were not secured by the deed of trust and consequently McConnell and the company

bearing his name did not subordinate their vendor's liens to such claims. Albert & Kernahan v. Franklin Arms, 104 N.J. 446, 148 Atl. 213; Dunn v. Wolf, 154 Wash. 445, 282 Pac. 842, 57 C.J.S. 764, Mechanics' Liens Sec. 202. 4 American Law of Property 239, Sec. 16.106H. (a) Purchase Money Mortgages v. Mechanics' Liens. To arrive at the opposite conclusion it is necessary to disregard the expressed intention of the parties as set forth in their written agreements. Doctrines which produce legal consequences contrary to the expressed intention of the contracting parties are admittedly hazardous to business practices and should not be resorted to where there is an absence of a constitutional, statutory or public policy demand compelling such course. No sufficient reason is suggested here for not giving effect to the contracts as written.

■ We next consider petitioners' contention that Mortgage Investment Company, by accepting the "Owner-Contractor bond" above mentioned, thereby subordinated its deed of trust lien to the mechanics' and materialmen's liens and thus lost the right to insist upon the agreement whereby the McConnell vendor's liens were subordinated to said deed of trust lien. In support of their contention petitioners cite such cases as Panhandle Telephone & Telegraph Co. v. Kellog Switchboard & Supply Co., 62 Texas Civ. App., 402, 132 S.W. 963, wr. ref. and Gugenheim v. Dallas Plumbing Company, Texas Civ. App., 42 S.W. 2d 268, reversed on other grounds than the holding here invoked, Id. Texas Com. App., 59 S.W. 2d 105, which support generally the proposition that when a vendor obligates his vendee to make certain repairs or improvements, the interest of the vendor may be subjected to the liens of those furnishing labor and materials for the improvements upon the theory that the vendor, in effect, contracts for such improvements or makes the vendee his agent for such purpose. 57 C.J.S. 573, Mechanic's Liens, Sec. 71 (3) (c), Annotations, 58 A.L.R. 949 and 102 A.L.R. 242.

In our opinion the Courts below correctly rejected petitioners' contention. To give the suggested effect to the "Owner-Contractor bond" would be to disregard the plain intent expressed in the instrument itself. This agreement is not one whereby a vendor obligates a vendee to make improvements upon property in which they both have an interest. On the contrary it is essentially a contract setting forth the obligations to be performed by the owner-contractor in order to secure a loan from a lendor and providing for the advancing of monies from the lender to the owner-contractor under specified conditions.

Among other provisions this "Owner-Contractor Bond" recites that the Mortgage Investment Company "is willing to make said loan and by the acceptance of this bond does agree subject to provisions of the Deed of Trust executed by owner-contract (Chaney & Singleton) and delivered to Lender which is referred to and made part hereof, to make the same and advance the proceeds thereof to owner-contractor as the work on the improvements progresses as follows: (here follows details as to advancements for the most part based upon F.H.A. inspections) provided it is assured that the lien first mentioned (the deed of trust lien) or any lien taken by it in lieu thereof will be and remain a first and prior lien upon the above described real estate and it is further assured that said improvements will be completed, free and clear of all laborers, mechanics' and materialmen's liens as hereinafter provided." This instrument further obligated the owner-contractor to "pay for all labor and material used in the construction and completion of said improvements and to prevent the enforcement of any mechanics', laborers' or materialmen's liens against said improvements or real estate other than the liens in favor of the Lender, * * *."

If an agreement such as this be construed as a waiver of the very priority of lien which it purports to preserve, it might well be questioned if any loan for construction purposes could be assured priority over liens asserted against the property for materials thereafter furnished in the course of the construction of a building. We have held that the deed of trust lien is superior to mechanics' and materialmen's liens securing claims for labor and materials furnished after the execution of the deed of trust. It is difficult to see how and in what way petitioners are prejudiced by the execution of the "Owner-Contractor Bond" setting forth various details of the financial arrangements between company and Chaney & Singleton. We accordingly hold that the vendor's liens remain in the priority position in which they were placed by the agreement of the parties.

Under the holdings above set forth, the priorities of the liens involved are established as follows: First, the deed of trust lien securing a principal indebtedness of $73,450.00 held by Mortgage Investment Company; Second, the McConnell vendor's liens securing an indebtedness aggregating the principal sum of $17,500.00, and Third, the mechanics' and materialmen's liens held by Mortgage Investment Company securing an aggregate principal indebtedness of $33,366.20. Under our holding the distinction drawn by the Court of Civil Appeals between the rights appertaining to the statutory and constitutional liens

becomes immaterial. All are owned by one litigant and all are subordinate to the deed of trust lien and the vendor's liens above mentioned.

As appears from the opinion of the Court of Civil Appeals, a receiver was appointed in this cause, properties of Chaney & Singleton were sold and the proceeds by such sales distributed under the orders of the trial court and in accordance with the agreements of the parties. A remand of the cause is deemed expedient to finally settle the rights of the parties. As to matters passed upon by this Court, the district court will be controlled by our holdings and proceed in a manner consistent with this opinion and in accordance with the stipulations of the parties.

The judgment of the Court of Civil Appeals reversing the judgment of the trial court and remanding the cause is affirmed. The district court upon remand is directed to proceed to judgment in accordance with the holdings herein set forth.

Opinion delievered July 24, 1957.

JUSTICE CULVER, joined by JUSTICES SMITH and GRIFFIN, dissenting.

I agree to the majority opinion in holding that the deed of trust lien in favor of Mortgage Investment Company did not lose its priority to the McConnell vendor's lien merely because of the acceptance of the "Owner-Contractor Bond," but I am not in accord with this decision in so far as it holds that the mechanics' and materialmen's liens are inferior to the McConnell vendor's lien.

The majority says "The all important element in the present litigation is the time of inception of the mechanics' and materialmen's liens." The majority considers that inasmuch as the facts do not show that a contract was let by the owner and the work commenced prior to the execution of the deed of trust, lien, they were inferior to the deed of trust lien and therefore inferior to the vendor's lien. I do not disagree with the general principle of law that, if a deed of trust lien is executed prior to the letting of the contract for and the commencement of the work, it is superior to the mechanics' and materialmen's liens for materials and labor furnished subsequently but under the facts in this case it is my opinion that this principle of law does not control here necessarily as between the holders

of the mechanics' and materialmen's liens and the holders of the subordinated vendor's liens.

The owner, Chaney and Singleton, executed a note for the sum of $119,000 and a deed of trust lien to secure the payment of the same. The only purpose for which the money was thus obtained, was to pay the cost of the construction of the 14 houses. To this deed of trust lien McConnell and the McConnell Land Company expressly subordinated their vendor's liens. The material and labor represented by the mechanics' and material-men's liens were a part of the cost.

All of the parties had entered into similar contracts with each other before. As in this case McConnell sold land to Chaney and Singleton, the deeds of trust were executed to Mortgage Investment Company and McConnell subordinated his vendor's liens to the deeds of trust. Under the terms of those contracts Chaney and Singleton had completed some 26 houses prior to the beginning of the work involved here and on those 26 houses McConnell was paid for the lots. Mortgage Investment Company was repaid the construction costs out of the proceeds of the F.H.A. insured loans made by Mortgage Investment Company to the respective purchasers.

McConnell knew at the time he signed the subordination agreement that Chaney and Singleton intended to use the money advanced by Mortgage Investment Company on the note and deed of trust for the construction of the 14 hourses and that Mortgage Investment Company was obligated to advance up to the sum of $119,000 or so much thereof as was necessary to complete the houses for sale.

Mortgage Investment Company during the months of April, May and June of 1953, as the work progressed, advanced to Chaney and Singleton the sum of $73,450.

I take it to be beyond question that if Mortgage Investment Company had advanced to Chaney and Singleton the amount of money necessary to pay the materialmen's and mechanics' lien whose claims have been held inferior to the vendor's lien that the deed of trust lien to that additional extent would be superior to the vendor's lien. I fail to see any material distinction to be made between the Mortgage Investment Company advancing the money directly to Chaney and Singleton to pay these claims and paying them to the mechanics and material-men. At the time Mortgage Investment Company was made

aware of these claims Chaney and Singleton had abandoned the project. No question is raised as to their validity. They were due and owing for work and material furnished and the total of these claims plus the amount advanced by Mortgage Investment Company to Chaney and Singleton is well within the $119,000 provided in the note and deed of trust to which McConnell subordinated his vendor's lien.

While Mortgage Investment Company does maintain that the mechanics' and materialmen's liens are superior to the purchase money lien because they are superior to the deed of trust lien, this is not the only ground upon which they assert that priority. They say that under all of the facts and circumstances in this case McConnell and the McConnell Construction Company are estopped to assert that their vendor's liens are subordinated to the constitutional and statutory liens which are now owned by Mortgage Investment Company. Surely the furnishers of material and labor knew constructively if not actually that Mortgage Investment Company had obligated itself to pay for the cost of construction up to $119,000 and that McConnell had agreed in effect that the cost of construction of these houses would be paid first and prior to his lien for the purchase price of the land. The subordination agreement should be reasonably and liberally construed to give effect to the obvious intent of the parties.

In my opinion the advances by petitioner to take up and satisfy these mechanics and materialmen liens for the account of Chaney and Singleton and the discounting of those claims were equivalent in law to advancements directly to Chaney and Singleton under the Mortgage Investment Company's deed of trust.

Both the note and the deed of trust to which the vendor subordinated his lien were in the regular and usual form. Each referred to the other and acknowledged an indebtedness to Mortgage Investment Company in the amount of $119,000. Although it is admitted that the money was borrowed for the purpose of erecting the 14 houses, both instruments were completely silent as to how or when or to whom the moneys were to be advanced. I think the owner, Chaney and Singleton, would be obligated to Mortgage Investment Company on the note for any sums that were advanced to the owner for construction purposes or advanced directly to mechanics and materialmen in the payment of bills legitimately incurred and duly owing. If the owner was obligated thus I do not see why the vendor's lien

is not subject to the repayment to Mortgage Investment Company of all the sums so advanced.

The contractor's bond given by the owner to Mortgage Investment Company did provide that the lender would make advances from time to time on F.H.A. inspections, the balance to be paid upon completion, but the owner likewise obligated himself to keep the property free and clear of any and all mechanics' and materialmen's liens. The owner could hardly complain, therefore, if Mortgage Investment Company performed this obligation for him, and to that extent deny liability on the note. The following authorities, I think, bear out the view that the mechanics' and materialmen's liens should be satisfied out of any balance remaining up to the amount of the note prior to the subordinated vendor's lien: Brush et al v. E. R. Bohan & Co. et al, 102 Cal. App. 457, 283 Pac. 126; Community Lumber Co. et al v. Chute et al, 215 Cal. 268, 10 Pac. 2d 57 superseding 292 Pac. 1069; Community Lumber Co. et al v. California Pub. Co. et al, 215 Cal. 274, 10 Pac. 2d 60; Andersonian Investment Co. v. Jones et al, 104 Wash. 142, 176 Pac. 17.

To the contrary American Law of Property, Vol. 4, Priorities, Sec. 16.106H states as a general rule that an agreement to subordinate the vendor's lien to the mortgage given to the lender of money for construction does not thereby subordinate it to mechanics' and materialmen's liens that could or should have been paid out of the construction alone. The author supports this statement by the following authorities: Community Lumber Co. v. Chute, 292 Pac. 1069 (Cal. 1930) superseded supra; Hoagland v. Lowe, 39 Neb. 397, 58 N.W. 197; Watson Land & Improvement Co. v. Salyers, 247 Pa. 454, 93 Atl. 495. However, I have found no Texas authorities bearing on this point and our case differs factually in that the claims were in effect paid by the Mortgage Investment Company.

It is held in West v. Reeves, 53 Neb. 472, 73 N.W. 935, that the lien of a materialman is subordinate to the lien of the vendor "except in cases where the vendor himself promotes the improvement or causes it to be made." This holding was found and quoted in L. P. Larson Real Property Co. v. Norris-Lyddon Produce Co., 127 Neb. 357, 255 N.W. 50, McConnell participated and cooperated in securing the construction loan by subordinating his lien. He knew that without the loan Chaney and Singleton could not proceed. He was financially interested in seeing that the houses were constructed and sold to prospective residents. Populating the addition would enhance the value of his

unsold land and particularly that portion designated and reserved by him for commercial use.

Nor do I consider that any material distinction is to be made here between the statutory and constitutional liens. The effect of the McConnell agreement was in my opinion to subordinate the purchase money liens to the cost of construction up to the amount of $119,000. So long as the claims were just, due and owing it made no difference to him whether the liens had been filed in the statutory manner or not. He was not such an innocent third party as to be affected by the failure to file. The Mortgage Investment Company had the privilege and the obligation to advance funds to pay these claims as they became due without requiring the necessity of filing for record and imposing this burden upon mechanics and suppliers of materialmen who should be able to rely upon the good faith performance of all parties. I think no rights have intervened here which would necessitate a distinction between constitutional and statutory liens.

I would affirm the Court of Civil Appeals with the modification that Mortgage Investment Company be awarded additionally judgment for the amounts paid out on the claims which were supported only by constitutional liens and accord to them priority over the purchase money lien.

Opinion delivered July 24, 1957.

Rehearing overruled Oct. 9, 1957, Justice Greenhill not sitting.